# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JOSHUA KYGAN (KY) HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:06-cv-1002 |
| ) | Judge Trauger |
| REBECCA SHARBER, Director of Schools, ) | |
| Williamson County, Officially; ) | |
| RICKY HEADLEY, ) | |
| Sheriff of Williamson County, Officially; ) | |
| DEPUTY DANNY BOOKER, ) | |
| Officially and Individually; and ) | |
| DEPUTY ANDY RYAN, ) | |
| Officially and Individually; ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is the motion for summary judgment filed by defendants Rebecca Sharber and Ricky Headley (Docket No. 17), to which the plaintiff has responded (Docket No. 32), and defendants Sharber and Headley have replied (Docket No. 35). Also pending is the motion for summary judgment filed by defendants Danny Booker and Andy Ryan (Docket No. 18), to which the plaintiff has responded (Docket No. 33), and defendants Booker and Ryan have replied (Docket No. 36). For the reasons discussed herein, the motion for summary judgment filed by defendants Sharber and Headley will granted, and the motion for summary judgment filed by defendants Booker and Ryan will be granted.

## FACTUAL BACKGROUND

1

During the 2005-2006 school year, Ky Hill attended Franklin High School ("FHS"), a public school in Williamson County, Tennessee.[1]

At all relevant times, the Williamson County Sheriff's Department (the "Sheriff's Department") and the Williamson County Director of Schools had an arrangement whereby representatives of the Sheriff's Department would conduct random canine drug sweeps in the parking lots of Williamson County high schools. To preserve the integrity of the sweep process, neither the deputies who conducted the sweeps nor the schools themselves were given notice of a sweep until the morning of the day a sweep was to occur.

On the morning of October 21, 2005, Deputy Andy Ryan and Deputy Debbie Rogers, both canine drug officers employed by the Williamson County Sheriff's Department, were notified that they would be conducting a sweep of the parking lots at FHS that day. On their way to FHS to conduct the sweep, Deputy Ryan called ahead to inform Deputy Danny Booker, a school resource officer employed by the Williamson County Sheriff's Department and assigned to FHS, that Deputies Ryan and Rogers would be conducting a sweep at FHS that day. When Deputies Ryan and Rogers arrived at FHS, they proceeded to conduct a sweep of the FHS

---

[1] Unless noted otherwise, the facts are taken from the Complaint (Docket No. 1) and from Plaintiff's Response to Statement of Undisputed Material Facts in Support of Summary Judgment Motion Filed by Defendants Booker and Ryan and Summary Judgment Motion Filed by Defendants Sharber and Headley (Docket No. 34).

2

parking lots using two trained drug dogs.[2] Deputy Booker and FHS Assistant Principal Todd Campbell were also present during the sweep.

During the course of the sweep of the Claude Yates Lot, the dog accompanying Deputy Ryan alerted to the possible presence of drugs in a white Mitsubishi Diamante. Deputy Booker ascertained that the car had been driven to school by Hill,[3] and an FHS staff member removed Hill from class and escorted him to the Claude Yates Lot. Hill was informed of the positive alert, given his Miranda rights, and asked if he had drugs in the car.[4] Deputy Ryan then handcuffed Hill's hands behind his back.[5] Hill complained that the handcuffs were too tight, at which point Deputy Booker removed the handcuffs and repositioned them with Hill's hands in front of his body. Hill indicated that the handcuffs were no longer too tight, although his wrists were slightly red, but not cut or bruised.

The deputies proceeded to search the interior of Hill's car, which took approximately ten minutes. Assistant Principal Campbell was also present during the search. During the search,

---

[2]The lot in question is adjacent to FHS and borders Claude Yates Drive (the "Claude Yates Lot"). This lot was leased to provide additional parking for FHS students and staff. Although Hill initially claimed that this lot was not school property, he has since acknowledged that it was leased by the school and was subject to FHS parking policies, (Docket No. 34 ¶¶ 17-18). In addition to the Claude Yates Lot, there was at least one other lot used by FHS students (the "Main Lot"). A parking pass was required for students to park in either the Claude Yates Lot or the Main Lot. A sign posted in the Main Lot notified students that vehicles parked on school property were subject to search for drugs or weapons. No such sign was posted in the Claude Yates Lot.

[3]Though operated by Hill, the car was owned by his mother.

[4]Deputy Ryan testified that Hill admitted to having alcohol in the car. (Ryan Dep. at 27.)

[5]Defendants Booker and Ryan maintain that Hill was never under arrest and that he was handcuffed strictly as a "routine officer/student safety measure" while they searched the car. (Docket No. 34 ¶ 30.)

3

Deputy Ryan found a duffel bag containing ten twelve-ounce bottles of beer in the car.[6] Following the search, Hill was freed from the handcuffs, escorted back into the school, and issued a citation for underage possession of alcohol on school premises.

As a result of the citation issued to Hill, FHS initiated a process to determine what disciplinary measures would be appropriate to take against Hill. As Hill was a special education student, FHS scheduled a meeting to determine whether Hill's conduct was a manifestation of his learning disability, as required under the federal Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. § 1415(k)(1)(E). That meeting took place on October 24, 2005 (the "Manifestation Meeting"). Hill and his parents were provided with notice of the meeting, and all three attended the meeting. Also in attendance were FHS Assistant Principal Christian Niemeyer, a special education teacher, a school psychologist, and a general education teacher.

During the Manifestation Meeting, the group discussed Hill's disability, his Individualized Education Plan ("IEP"), and his academic and special education records. They then addressed two questions specifically[7]: whether Hill's conduct was caused by or had a direct relationship to Hill's disability, and whether Hill's conduct was a direct result of FHS's failure to implement Hill's IEP. With respect to the first question, the group agreed that Hill's conduct was not caused by, and did not have a direct relationship to, Hill's disability. With respect to the

---

[6]Hill also alleges that the deputies found a souvenir baseball bat, two box cutters, two compact discs, and marijuana seeds, and that certain of these items were never returned. (Docket No. 35 ¶ 43.) Whether the deputies found any of these materials is irrelevant, however, as the disciplinary measures that Hill challenges were predicated on the deputies' discovery of alcohol in the car, a fact that is undisputed.

[7]The IDEA requires that a school making a manifestation determination address these two questions. 20 U.S.C. § 1415 (k)(1)(E)(i).

4

second question, the FHS teachers and staff agreed that Hill's conduct was not a direct result of FHS's failure to implement Hill's IEP. Hill and his parents, however, indicated that they were not sure. Regardless, the group determined that Hill's conduct was not a manifestation of his disability.[8] Although they were provided with notice of their rights to appeal this determination under the IDEA, neither Hill nor his parents ever appealed the determination.

Following the Manifestation Meeting, Hill was disciplined in accordance with FHS's zero-tolerance policy. Under that policy, students found to possess alcohol on school premises are placed at Williamson County's Alternative Learning Center and suspended from extracurricular activities at FHS. For approximately one month, Hill attended classes at the Alternative Learning Center, where he continued to receive educational services in accordance with his IEP,[9] and was suspended from the FHS hockey team. At the conclusion of one month, Hill returned to classes at FHS.

## ANALYSIS

Hill asserts that the search of his car and his handcuffing during that search constituted violations of the Fourth Amendment. Hill additionally asserts violations of the federal

---

[8]Hill asserts that his parents were "not permitted to vote" on the two statutory questions addressed during the Manifestation Meeting. (Docket No. 37 ¶ 10.) The defendants assert, however, that the attendees at the meeting did not so much "vote" as much as they reached "consensus." (Docket No. 37 ¶ 10.) Regardless, Hill acknowledges that he is not challenging the sufficiency of the Manifestation Meeting under the IDEA, but rather the validity of the meeting, as it was premised, Hill claims, on the illegal search of his car. (Docket No. 32 at 8; Docket No. 34 ¶ 68.)

[9]Hill vaguely asserts that the Alternative Learning Center was "not conducive to a learning environment," but he does not dispute the fact that he received special education services in accordance with his IEP while attending the Alternative Learning Center. (Docket No. 35 ¶ 79.)

5

Individual with Disabilities Education Act ("IDEA"), violations of procedural and substantive due process and equal protection under the Fourteenth Amendment, conspiracy, and violations of a variety of state law provisions.[10] The defendants have moved for summary judgment with respect to these claims.

I.  **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary

---

[10]In the Complaint, Hill additionally asserted claims under the First Amendment, but he has since conceded any such claims. (Docket No. 32 at 8; Docket No. 33 at 7.)

6

judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## II.     Fourth Amendment Claims

The Fourth Amendment provides "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Generally, a search or seizure is deemed unreasonable in the absence of a warrant, which demands a showing of probable cause. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). In certain circumstances, however, neither a warrant nor probable cause may be required for a search or seizure to be deemed constitutional. *See id.*

One such circumstance is in the context of public education. The Supreme Court has held that "the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause." *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985). Instead, the legality of a

7

search in the school context depends simply on whether a search is reasonable given all of the circumstances. *Id.* To determine whether a search is reasonable, a court must consider first whether a search was "justified at its inception" and then whether the scope of the search was "reasonably related to the objectives of the search." *Id.* at 341-42. The search at issue in *T.L.O.*, however, was conducted by school officials, and the Supreme Court explicitly declined to address the standard applicable to searches conducted by law enforcement in the school context.[11] *Id.* at 341 n.7 ("This case does not present the question of the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies, and we express no opinion on that question.").

    A.    Search of Hill's Car

Hill first challenges the constitutionality of the search of his car. He asserts that the standard articulated in *T.L.O.*, rather than the general standard of probable cause, applies because a school official was present during the search. (Docket No. 33 at 6.) However, he asserts that, even under the *T.L.O.* standard, the search was illegal because, he alleges, the school did not comply with the Tennessee School Security Act ("TSSA") governing searches by school officials on school property. The TSSA provides:

---

[11]The *T.L.O.* Court likewise declined to address the issue of whether individualized suspicion is required to render a search by school authorities reasonable, although individualized suspicion was present in that case. 469 U.S. at 342 n.8. In a subsequent cases, the Court upheld suspicionless searches of students engaged in athletics and extracurricular activities. *See Vernonia*, 515 U.S. at 664-65; *Bd. of Educ. of Indep. Sch. Dist. No. 92 v. Earls*, 536 U.S. 822, 837-38 (2002). The Sixth Circuit has also noted that, in the case of searches in the school context, individualized suspicion is not necessarily required. *See Knox County Educ. Assoc. v. Knox County Bd. of Educ.*, 158 F.3d 361, 384 (6th Cir. 1998) (holding that suspicionless drug testing of school teachers did not violate the Fourth Amendment).

8

> When individual circumstances in a school dictate it, a principal may order that vehicles parked on school property by students or visitors . . . be searched in the principal's presence or in the presence of other members of the principal's staff.

Tenn. Code Ann. § 49-6-4204(a). With respect to the search of cars on school property, the TSSA additionally contains this notice provision:

> A notice shall be posted where it is visible from the school parking lot that vehicles parked on school property by students or visitors are subject to search for drugs, drug paraphernalia or dangerous weapons.

Tenn. Code Ann. § 49-6-4204(d). The defendants effectively concede there was no such sign posted in the Claude Yates Lot, where Hill had parked his car and where the sweep and subsequent search of Hill's car took place (Docket No. 36 at 9-11), and Hill concedes that there was a sign that complied with the notice provision posted in the Main Lot (Docket No. 34 ¶ 3). Thus, the parties' dispute focuses on whether the fact that a sign was posted in *one* of the school's parking lots—but not in the Claude Yates Lot, where the sweep and the subsequent search of Hill's car took place—is sufficient to bring FHS into compliance with the notice provision in the TSSA. The defendants assert that this is sufficient, while Hill argues that the TSSA requires that a sign be posted in each lot.

The parties' focus on the TSSA, however, is a red herring. As the search in question was conducted not by school officials but by law enforcement, it was not—nor was it required to be—conducted in keeping with the statute, so long as it comported with the requirements of the Constitution. The Eleventh Circuit case of *Hearn v. Board of Public Education* is instructive on this point. 191 F.3d 1329 (11th Cir. 1999). In that case, local police conducted a drug dog sweep of a school's parking lot. A drug dog alerted to the possible presence of drugs in a car owned by a teacher, and a subsequent search of the vehicle revealed the presence of marijuana. The teacher was asked to take a drug test, refused, and was subsequently fired on the basis of a

9

Board of Education policy that provided for drug testing of a school employee where there was a reasonable suspicion of drug use, and for termination if an employee refused to consent to the drug test.

In a lawsuit asserting claims under the Fourth Amendment, the teacher argued that the drug test policy was not applicable because no reasonable suspicion existed, and that no reasonable suspicion existed because the search of the car violated a Board policy requiring an employee's consent to a search of her property at school. *Id.* at 1331-32. The court rejected this argument, finding that the policy regarding the search of a teacher's property was irrelevant to law enforcement's search of the car, because the policy applies to "intra-school events" involving "only school officials and school employees," governing only those situations where a school official has a reasonable suspicion of an employee's drug use. *Id.* at 1332. Because the sweep of the parking lot constituted a "law enforcement event," it was "limited only by the Constitution" and was not trumped or limited by the search policy. *Id.*

To borrow the language of *Hearn*, the TSSA, on which Hill relies, governs "intra-school events" initiated by school officials where there is individualized suspicion of wrongdoing. *See* 42 U.S.C. § 49-6-4204 ("When individualized circumstances in a school dictate it, a principal may order that vehicles parked on school property . . . be searched . . . ."). It does not apply to events initiated and conducted by law enforcement.[12] Here, it was the Sheriff's Department that

---

[12]Indeed, in a recent case discussing the TSSA, the Tennessee Supreme Court adhered closely to the language of the statute, ruling that the statute, by its terms, applies only to searches ordered by a school principal and declining to read that language as granting authority to a vice principal to order a search in the principal's absence. *R.D.S. v. Tennessee*, No. M2005-00213-SC-R11-JV, 2008 Tenn. LEXIS 28, at *28-*29 n.6 (Tenn. Feb. 6, 2008). The Tennessee Supreme Court additionally noted that, while the TSSA provides that a reasonable suspicion standard governs searches at a school by school officials or "a law enforcement officer assigned to a school on a regular basis," the probable cause standard governs searches at school by "a law

10

made the determination to sweep the Claude Yates Lot and Sheriff's Department deputies who conducted both the sweep and the subsequent search of Hill's car. School officials were not involved in scheduling, planning, or conducting the sweep or the subsequent search, and indeed were only informed of the sweep as the deputies were on their way to FHS, a fact that Hill does not dispute. (Docket No. 34 ¶ 15.) Additionally, the fact that an FHS assistant principal was present during the sweep and subsequent search does not alter the fact that the event was fundamentally a law enforcement event. *See Hearn*, 191 F.3d at 1332 (holding that the fact that a campus police officer conducted the search of the plaintiff's car and "happened to be the one to find the marijuana" after law enforcement conducted the sweep and obtained a positive alert on the plaintiff's car "does not change the fact that this was a law enforcement event."). Nor is the fact that Deputy Booker was assigned to FHS availing, as the sweep was initiated without his involvement, and his participation in the sweep and the subsequent search was simply in the nature of providing assistance to Deputy Ryan, the canine unit deputy assigned to conduct the sweep. Moreover, as the court noted in *Hearn*, even if the TSSA did create a heightened expectation of privacy with regard to Hill's car when parked in the Claude Yates Lot—which seems doubtful, given Hill's admission that the school's parking policies applied to cars parked in the Claude Yates Lot (Docket No. 34 ¶ 18)—such a heightened expectation "does not bind local law enforcement."[13] *Id.*

---

enforcement officer not associated with the school system." *Id.* at *28.

[13]The defendants assert that the purpose of the TSSA is to expand, rather than restrict, the authority of school officials to search students (Docket No. 21 at 9), while Hill argues essentially that the TSSA creates additional restrictions on school officials' searches of students (Docket No. 32 at 5-6). As the statute is not applicable in this case regardless, it is unnecessary to conduct a detailed examination of the purpose of the statute and the interplay between that statute and the jurisprudence surrounding searches of students under *T.L.O.*

11

As the sweep of the parking lot and the subsequent search of Hill's car constituted a law enforcement event, this court need not determine whether the TSSA's notice provision requires a sign to be posted in each of the school's parking lots. Instead, the sole issue is whether the deputies' actions comported with the strictures of the Fourth Amendment.

First, it is inarguable, and Hill does not contest, that a dog sniff does not constitute a search under the Fourth Amendment. *United States v. Perez*, 440 F.3d 363, 375 (6th Cir. 2006) (citing *United States v. Place*, 462 U.S. 696, 700-01 (1983)); *Hearn*, 191 F.3d at 1332-33 ("A dog sniff of a person's property located in a public place is not a search within the meaning of the Fourth Amendment."). Additionally, the Sixth Circuit has held that law enforcement officers may sweep a parking lot with drug dogs without implicating the Fourth Amendment, as individuals do not have a reasonable expectation of privacy in a parking lot that is accessible to the public.[14] *United States v. Diaz*, 25 F.3d 392, 396 (6th Cir. 1994) (holding that dog sniff of car parked in motel parking lot, which law enforcement could lawfully enter, did not implicate Fourth Amendment); *see also United States v. Ludwig*, 10 F.3d 1523, 1527 (10th Cir. 1993) (holding that a random and suspicionless dog sniff is not a search subject to the Fourth Amendment so long as law enforcement is lawfully present in the area where the dog sniff occurs).

Moreover, the fact that the parking lot was school property and required a parking pass to park there does not save Hill's claim. *See United States v. Gooch*, 499 F.3d 596, 603 (6th Cir. 2007) (holding that individual who paid to park in VIP section of parking lot did not have

---

[14]Hill makes much of the fact that Deputy Ryan testified that the Sheriff's Department does not conduct random drug dog sweeps of the public because that would require probable cause. (Ryan Dep. at 11.) However, it is the Sixth Circuit's interpretation of the law that governs this analysis, and not that of the deputy.

12

expectation of privacy where "nothing at all prohibited others, including police officers, from walking through this so-called 'restricted area'"). As in *Gooch*, there is no evidence that the Claude Yates Lot was fenced or that entry into the lot by the general public was at all limited. Although students were required to have a parking pass to park in the lot, there is nothing in the record to suggest that a member of the general public—or law enforcement, for that matter—could not access the lot. As Hill had no reasonable expectation of privacy in the Claude Yates Lot, the sweep did not constitute a search under the Fourth Amendment.

Finally, with respect to the search of Hill's car subsequent to the positive dog alert, that search was supported by probable cause. A positive alert by a trained and reliable drug dog establishes probable cause. *Diaz*, 25 F.3d at 393-94 ("A positive indication by a properly-trained dog is sufficient to establish probable cause for the presence of a controlled substance."); *Hearn*, 191 F.3d at 1332-33 ("[T]he alerting of a drug-sniffing dog to a person's property supplies not only reasonable suspicion, but also probable cause to search that property."). There is no dispute that the drug dog that made the alert on Hill's car was properly trained and possessed the requisite indicia of reliability. (Docket No. 34 ¶ 24.) Thus, the positive alert provided probable cause for the search of Hill's car. Moreover, the scope of the search was reasonable. The deputies searched the interior of the car and found alcohol within a duffel inside the car. As the duffel bag was a container that reasonably could have contained drugs, the probable cause generated by the drug dog's positive alert extended to the duffel bag, and the search of the bag thus was legal. *United States v. Ross*, 456 U.S. 798, 821-22 (1982) (upholding search of bag located in trunk of car where there was probable cause to believe that the trunk contained drugs).

13

As there is no genuine issue of material fact as to Hill's claim that he was subject to an illegal search under the Fourth Amendment, summary judgment for the defendants is appropriate as to that claim.

B.    Handcuffing

Hill additionally asserts that his handcuffing during the search of his car constituted an unreasonable seizure of his person in violation of the Fourth Amendment.

First, it is clear that, for the purposes of the Fourth Amendment, the fact that Hill was handcuffed during the search of his car constituted a seizure of his person. *Michigan v. Summers*, 452 U.S. 692, 696 n.5 (1981) ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). Such seizure may be permissible under the Fourth Amendment, even in the absence of a warrant, however, if the seizure represents a "limited intrusion that may be justified by special law enforcement interests." *Id.* at 700. In *Summers*, the Supreme Court held that, where police had a warrant based on probable cause to search an individual's home for contraband, they were also authorized to detain the individual in light of the law enforcement interests in preventing the risk of flight, minimizing the risk of harm to the officers, and facilitating the completion of the search. *Id.* at 702-03.

Later, the Supreme Court specified that this detention authority encompasses the authority to use reasonable force. *Muehler v. Mena*, 544 U.S. 93, 98-99 (2005). The Court noted that, although the use of handcuffs to detain an individual in conjunction with a search constitutes a greater intrusion than a simple detention, such as that in *Summers*, handcuffs may nevertheless constitute reasonable force in certain circumstances. *Id.* at 99. The Court went on

14

to approve law enforcement's use of handcuffs where the officers had obtained a warrant to search the premises of a known gang member for weapons. *Id.* at 100.

Thus the question here is whether the law enforcement interests in preventing flight, minimizing risk to the deputies, and completing the search outweighed the intrusion of handcuffing Hill for the duration of the search. Deputy Ryan testified that Hill seemed "nervous" during the course of the search, that it was "routine" to handcuff individuals in such circumstances, that it is hard to predict when an individual might become violent, and that the risk to the officers is heightened during a search because the search requires that the officer's attention be diverted away from the individual. (Ryan Dep. at 27-30.) Although there is relatively little evidence to suggest that Hill posed a risk to the deputies, in that Hill did not behave aggressively and there as no indication that he was armed, the fact is that Hill was handcuffed for just ten minutes and was informed at the time that he was being handcuffed solely to protect his safety and that of the deputies. (Ryan Dep. at 23-24.) Such a minor additional intrusion on Hill's person is balanced by the law enforcement interests in minimizing the risk to the deputies, preventing flight, and completing the search.

Hill also alleges that the handcuffing violated the Fourth Amendment in that it constituted excessive force, as the handcuffs were initially applied too tightly and caused some redness on his wrists. For tight handcuffing to constitute excessive force, however, Hill must demonstrate not only physical injury but also that the deputies did not respond to his complaints that the handcuffs were too tight. *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005). While the redness that Hill experienced on his wrists may constitute injury, he acknowledges that Deputy Booker repositioned the handcuffs after Hill complained and that the repositioning

15

alleviated the discomfort he had experienced. (Docket No. 34 ¶ 32.) Thus, Hill cannot establish a claim of excessive force based on the tight handcuffing.

As summary judgment will be granted on Hill's Fourth Amendment claims arising from both the search of his car and his handcuffing during that search, there is no need to address the defendants' arguments that the claims against Deputies Booker and Ryan are barred under the qualified immunity doctrine, and that the official capacity claims against all four defendants fail because Hill has not established governmental entity liability under Section 1983.

### III.   IDEA Claims

Hill next alleges that the actions taken by FHS subsequent to his citation for possessing alcohol on school property constitute a violation of the IDEA.[15] Hill concedes, however, that the Manifestation Meeting was conducted properly pursuant to the IDEA (Docket No. 32 at 8) and that he continued to receive services in keeping with his IEP for the duration of his placement at the Alternative Learning Center (Docket No. 34 ¶¶ 73; 79). Instead, Hill challenges the fact that the meeting took place at all, asserting that the meeting was premised on the allegedly illegal search that led to the discovery of alcohol in his car, and essentially claiming that the meeting was tainted by that search.[16] (Docket No. 32 at 8.)

---

[15]Hill concedes any IDEA claims as against Deputies Booker and Ryan. (Docket No. 33 at 6.)

[16]Hill also asserts that FHS would not have been able to take disciplinary measures had the search not occurred on school property. (Docket No. 32 at 5; Docket No. 33 at 8.) However, Hill does not dispute that the Claude Yates Lot was, in fact, leased to provide parking for FHS students. (Docket No. 34 ¶¶ 17-18.) And, although the search was not conducted by school officials, there does not appear to be any basis for Hill's assertion that the school is prevented from taking disciplinary action simply because the misconduct was discovered by law enforcement in the process of conducting a legal search.

16

As the sweep of the Claude Yates Lot and the subsequent search of Hill's car were not illegal, there is no basis for Hill's argument that the Manifestation Meeting and the disciplinary actions subsequently taken by the school were based on a Fourth Amendment violation.[17] As such, summary judgment is appropriate as to this claim.

IV.     **Fourteenth Amendment Claims**

In addition to his Fourth Amendment claims, Hill asserts several ill-defined claims under the Fourteenth Amendment, including claims that his rights of procedural due process, substantive due process, and equal protection were violated.

With respect to Hill's purported equal protection claim, that claim is supported by virtually no factual allegations or evidence in either the complaint or in Hill's briefs in opposition to the defendant's motions for summary judgment. Moreover, Hill has not provided any evidence to suggest that he was treated any differently from others similarly situated, as required to establish an equal protection claim. *See Buchanan v. City of Bolivar*, 99 F.3d 1312, 1360 (6th Cir. 1996) ("The equal protection clause requires public institutions to 'treat similarly situated individuals in a similar manner.'") (citation omitted). As such, summary judgment is appropriate on this claim.

As for Hill's substantive due process claim, Hill has not demonstrated that the disciplinary measures taken by FHS did not bear a rational relationship to his offense. *See Seal v. Morgan*, 229 F.3d 567, 575 ("In the context of school discipline, a substantive due process claim will succeed only in the rare case when there is no rational relationship between the

---

[17]The defendant also argues that Hill failed to exhaust his administrative remedies under the IDEA. As there is no basis for Hill's IDEA claim under any circumstances, there is no need to address the exhaustion argument.

17

punishment and the offense.") (quotations and citation omitted). Although the Sixth Circuit has warned schools against applying zero-tolerance policies blindly where a student has no knowledge that he possesses contraband, *see id.* ("[S]uspending or expelling a student for weapons possession, even if the student did not knowingly possess any weapon, would not be rationally related to any legitimate state interest."), such was not the case here, as Hill acknowledged that the alcohol contained in the car was his (Hill Dep. at 34; Ryan Dep. at 27).

Turning to his procedural due process claim, Hill asserts that application of the zero-tolerance policy violated due process to the extent that it was based on a search that Hill claims was illegal, and to the extent that FHS did not investigate whether the car (or, presumably, the beer) was owned by Hill, disciplining Hill "on [the basis of] possession only." (Docket No. 32 at 9; Docket No. 33 at 8.) His first argument fails because, again, the search of the car was legal, and his second argument, which goes more to his substantive due process claim as already addressed, fails as well. As the touchstone of procedural due process is that an individual must be provided with notice and an opportunity to be heard before disciplinary measures are taken, *see Williams v. Cambridge Bd. of Educ.*, 370 F.3d 630, 639 (6th Cir. 2004) (holding that school officials most provide notice and explanation of charge against student and opportunity for student to respond to charge before imposing a short-term disciplinary suspension), and as it is undisputed that Hill and his parents were given notice and an opportunity to be heard in the context of the Manifestation Meeting that took place before Hill was disciplined, Hill has not demonstrated that there exists any issue of material fact as to his procedural due process claim.

## V.     Conspiracy Claims

In his complaint, Hill alludes vaguely to an allegation that the defendants "acted in unison or in a conspiracy" to violate his federal constitutional rights. (Docket No. 1 ¶ 16.)

However, he has since conceded any civil rights conspiracy claim arising under Section 1985 (Docket No. 32 at 9), and now asserts that "the conspiracy charge is more in the nature of a charge that the defendants acted in a coordinated manner in a reckless or callous indifference to plaintiff's rights" (Docket No. 32 at 10; Docket No. 33 at 9). Under any circumstances, Hill's conspiracy claims are based on his allegation that the search of his car was illegal,[18] and thus this court's ruling that the search was not illegal disposes of any conspiracy claim Hill may have had.

## VI. State Law Claims

In addition to his federal claims, Hill asserts state law causes of action under the TSSA and for assault, battery, and theft under Tennessee common law arising from the sweep and subsequent search of his car by Deputies Booker and Ryan.

The basis for jurisdiction over these claims is supplemental, and therefore is premised on the existence of a viable federal claim. *See* 28 U.S.C. § 1367. As Hill's federal claims are all dismissed, this court will decline to exercise jurisdiction over Hill's state law claims. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under [this] section if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations will usually point to dismissing the state law claims . . . .").

---

[18]Hill alleges that Headley and Sharber are liable for conspiracy in that "they neglected to follow the statutory signage requirement [under the TSSA]" (Docket No. 32 at 10), that Headly "dispatched the defendant deputies to the unmarked parking lot" (Docket No. 33 at 9), and that Booker and Ryan "had an opportunity to observe that there was not signage for the parking lot and should have notified the Sheriff of that fact" (Docket No. 33 at 9).

19

## **CONCLUSION**

For the reasons discussed herein, the motion for summary judgment filed by the defendants Sharber and Headley will be granted, and the motion for summary judgment filed by the defendants Booker and Ryan will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge